IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00189-PAB-CBS

LORI L. PARK,
    Plaintiff,
v.

FISERV TRUST COMPANY,
FISERVISS,
FISERV, INC.,
LINCOLN TRUST COMPANY,
TRUST INDUSTRIAL BANK HOLDINGS, INC., and
ROBERIAULT HOLDINGS, INC.,
    Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on "Defendants' Motion to Dismiss and Brief in Support Thereof" (filed July 21, 2010) (doc. # 38). Pursuant to the Order of Reference dated February 1, 2010 (doc. # 3) and the memorandum dated July 22, 2010 (doc. # 39), this matter was referred to the Magistrate Judge. The court has reviewed Defendants' Motion, Ms. Park's Response (filed August 23, 2010) (doc. # 48), Defendants' Reply (filed September 10, 2010) (doc. # 52), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Proceeding *pro se*, Ms. Park filed the instant action on January 28, 2010. (*See* doc. # 1). Ms. Park's Third Amended Complaint ("TAC") was accepted for filing on May 26, 2010. (*See* doc. # 29). Ms. Park alleges ten claims for relief arising from her term of employment with TD Ameritrade Trust Company, Inc.: (1) "Race/National Origin Discrimination and Retaliation Under 42 U.S.C. § 1981 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986;"

1

(2) "Sex Discrimination in Violation of 42 U.S.C. § 2000e-2 et seq., as amended, 42 U.S.C. § 1985, 42 U.S.C. § 1986;" (3) "Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1985, 42 U.S.C. Section 2000(e)(3)(a), 42 U.S.C. § 1986;" (4) "Discriminatory or Unfair Employment Practice Under "CADA" Gender/Gender Plus;" (5) "Promissory Estoppel & Breach of Contract, 42 U.S.C. § 1985;" (6) "Negligence, 42 U.S.C. § 1985, 42 U.S.C. § 1988, 42 U.S.C. Section 2000(e)(10)(a)(b), 42 U.S.C. § 1986;" (7) "Outrageous Conduct, Threats, & Implied Threats, 42 U.S.C. § 1988, 42 U.S.C. § 1986;" (8) "Intentional Infliction of Emotional Distress, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988;" (9) "American's [sic] with Disabilities Act ("ADA") of 1990, as amended, 42 U.S.C. § 1986, 42 U.S.C. § 12112 et seq.;" and (10) "Fraud and 42 U.S.C. § 1985." (*See* TAC (doc. # 29) at pp. 45-59 of 60). Ms. Park seeks, among other things, compensatory and punitive damages, "[p]rejudgment and post-judgment interest," backpay, front pay, "equitable relief," attorneys' fees, and costs. (*See* TAC (doc. # 29) at pp. 59-60 of 60).

II.   Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the TAC.

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.

*Stine v. Wiley*, 2008 WL 4277748 *3 (D. Colo. 2008) (internal quotation marks and citations omitted).

A court may also dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

> In reviewing a motion to dismiss, this court must look for plausibility in the complaint. Under this standard, a complaint must include enough facts to

state a claim to relief that is plausible on its face. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal quotation marks and citations omitted). "If the allegations are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (affirming dismissal of 116-page second amended complaint for failure to state a claim upon which relief can be granted). Because Ms. Park is appearing pro se, the court construes her pleadings and papers liberally, but the court's role is not to act as her advocate. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

III. Defendants Who Are Not Real Parties in Interest

Ms. Park has named as Defendants entities that are not real parties in interest. First, Ms. Park alleged in *Lori L. Park v. TD Ameritrade Trust Company, Inc. et al.* that TD Ameritrade Online Holdings Corp. ("TDA Online") acquired all of the stock of Fiserv Trust Company in February 2008 and is "the successor in interest of FTC and it is responsible for FTC's and FiservISS liabilities." (*See* Case No. 10-cv-00188-PAB-BNB, doc. # 19-1 (Exhibit D to Motion to Dismiss (doc. # 38-4) at pp. 1-2 of 3). The court may take judicial notice of its own files and records. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (citations omitted). Also, Lincoln Trust Company was not in existence at the time of the events addressed in the TAC. (*See* Articles of Incorporation, Exhibit C to Motion to Dismiss (doc. # 38-4)). The court may take judicial notice of facts which are a matter of public record. *Ahidley*, 486 F.3d at 1192 n.5 (citations omitted). Ms. Park argues that the TAC "clearly alleges sufficient facts to provide Defendants fair notice of her successor liability claim and, taking her allegations as true, it is plausible that Lincoln Trust or Robert

Beriault Holdings are successor in interest." (*See* Response (doc. # 48) at p. 29 of 34). However, nowhere in the TAC has Ms. Park pled any facts that Fiserv Trust Company, Fiserviss, or Lincoln Trust Company are successors in interest.

Ms. Park further responds that Defendants were "Joint Employer[s]." (*See* Response (doc. # 48) at p. 28 of 34). The protections of Title VII apply only to discrimination against an employee by that person's employer. *See, e.g., Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). The joint employer test is used to determine whether a plaintiff was an employee of two or more separate entities. *See Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005) ("In a joint employer relationship, in contrast, there is no single integrated enterprise. A conclusion that employers are joint assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly.") (internal quotation marks and citation omitted). "Courts applying the joint-employer test treat independent entities as joint employers if the entities share or co-determine those matters governing the essential terms and conditions of employment." *Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1217-1218 (10th Cir. 2002) (internal quotation marks and citation omitted).[1] "In other words, courts look to whether both entities "exercise significant control over the same employees." *Id.* There are no facts set forth in the TAC to support Ms. Park's joint employer argument. Ms. Park makes reference to Defendants throughout the TAC without differentiation as to each Defendant and its conduct. Ms. Park has not alleged that any of the Defendants, as separate entities, co-determined the essential terms and conditions of her employment.

For these reasons, Defendants Fiserv Trust Company, Fiserviss, and Lincoln Trust Company are properly dismissed from this civil action.

---

[1] *Bristol* addressed a claim under the ADA, but applied the term "employer" as that term is defined in Title VII. 312 F.3d at 1217.

IV.  Failure to Exhaust Administrative Remedies

Ms. Park asserts four federal claims in her TAC: First Claim For Relief ("Race/National Origin Discrimination and Retaliation Under . . . Title VII . . ."); Second Claim For Relief ("Sex Discrimination in Violation of 42 U.S.C. § 2000e-2 et seq. . . ."); Third Claim For Relief ("Retaliation in Violation of Title VII . . . , 42 U.S.C. Section 2000(e)(3)(a)"); and Ninth Claim For Relief ("Americans With Disabilities Act . . . , 42 U.S.C. § 12112 et seq."). A Title VII plaintiff must exhaust his or her administrative remedies for each individual discriminatory or retaliatory act. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). Likewise, "Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (citation omitted). "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones*, 502 F.3d at 1183.

In determining whether a plaintiff has exhausted his or her administrative remedies, the court must "determine the scope of the allegations raised in the EEOC charge because [a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones*, 502 F.3d at 1186 (internal quotation marks and citation omitted). Charges filed with the EEOC are liberally construed in determining whether administrative remedies have been exhausted as to a particular claim. *Jones v. United Parcel Service, Inc.*, 502 F.3d at 1186 (citations omitted). Nevertheless, the "inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge." *Jones*, 502 F.3d at 1186 (emphasis in original). "In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; . . ." *Id.*

Ms. Park alleges in her TAC that she filed a Charge Of Discrimination with the EEOC on September 15, 2008. (*See* TAC (doc. # 29) at p. 6 of 60, ¶ 8; *see also* Exhibit 3 to TAC

(doc. # 29-3)). In her Charge of Discrimination, Ms. Park marked only the box "Retaliation" as the basis for the alleged discrimination. (*See* doc. # 29-3 at p. 2 of 3). "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." *Jones*, 502 F.3d at 1186 (citation omitted). "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." *Id.* In the text of her charge, Ms. Park identified retaliation, harassment, and hostile work environment, but did not indicate that she was discriminated against based on her race, sex, national origin, or a disability. (*See id.*).[2] Ms. Park's EEOC charge contained no factual allegations of treatment in manner or degree sufficient to allege discrimination based on her race, sex, national origin, or a disability and the references in her Charge of Discrimination to retaliation, harassment, and hostile work environment are not sufficiently related and cannot reasonably be expected to lead to claims for discrimination based on her race, sex, national origin, or a disability. Exhaustion requirements preclude Ms. Park's claims that are not documented in the EEOC charge. Ms. Park thus failed to exhaust her administrative remedies with respect to any claims for discrimination based on race, national origin, sex, or disability. For this reason, Ms. Park's First, Second, and Ninth Claims for Relief are properly dismissed for failure to exhaust administrative remedies, a jurisdictional prerequisite to suit.

Further, in her Charge Of Discrimination, Ms. Park identified only "Fiserv ISS" as her employer. (*See* doc. # 29-3 at p. 2 of 3). Because Plaintiff failed to identify any other Defendants as her employer, the scope of the administrative investigation could not have reasonably been expected to include the other named Defendants. In addition, because Lincoln Trust Company was not in existence at the time of the events addressed in the TAC (*see* Articles of Incorporation, Exhibit C to Motion to Dismiss (doc. # 38-4)), the scope of the administrative investigation could not have reasonably been expected to include Lincoln

---

[2] Ms. Park has not identified her national origin.

Trust Company. Defendants Lincoln Trust Company and Robert Beriault Holdings, Inc. move for dismissal based on Ms. Park's failure to exhaust her administrative remedies with respect to them. Defendants Lincoln Trust Company and Robert Beriault Holdings, Inc. are properly dismissed from the First, Second, Third, and Ninth Claims for Relief.

V.     Failure to State Claim upon which Relief Can Be Granted: First, Second, Third, and Ninth Claims for Relief

"The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981." *Somoza v. University of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). "In order to establish a prima facie case of retaliation," a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza*, 513 F.3d at 1211 (internal quotation marks and citation omitted). "Opposition is protected under § 2000e-3(a) only if it is opposition to a practice made an unlawful employment practice by Title VII." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) (internal quotation marks and citation omitted).

Ms. Park's retaliation claims require a prima facie showing "that a reasonable employee would have found the challenged action materially adverse." *Somoza*, 513 F.3d at 1211 (internal quotation marks and citation omitted). An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation marks and citation omitted). "[A] mere inconvenience or an alteration of job responsibilities, is not an adverse employment action." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (internal quotation marks and citation omitted).

To lay a factual foundation for a hostile work environment claim, Ms. Park must

allege facts indicating a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (internal quotation marks and citations omitted).

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). While the ADA does not define either "substantially limits" or "major life activity," the ADA regulations adopt the definition found in the Rehabilitation Act regulations, 34 C.F.R. § 104. *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 900 (10th Cir. 1997) (citation omitted). As defined, a "major life activity" includes, but is not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). *See MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444 (10th Cir. 1996) (adopting regulation's definition of "major life activities") (quoting 29 C.F.R. § 1630.2(i)); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir. 1996) (including sitting, standing, lifting and reaching from 29 C.F.R. § 1630, App. § 1630.2(i)).

Ms. Park's third version of her pleadings (*see* "Title VII Complaint" (doc. # 1), "Title VII Amended Complaint" (doc. # 11), "Title VII 3rd Amended Complaint" (doc. # 29)), consists of 60 pages, 176 numbered paragraphs, and over 65 pages of attached exhibits. Ms. Park includes in her allegations essentially every perceived slight that she experienced in the workplace. The level of detail, irrelevancies, and repetition do not amount to stating a plausible legal claim for relief under the federal statutes Ms. Park invokes. *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (complaint made "unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter.")

(internal quotation marks and citation omitted). Many of Ms. Park's allegations are extraneous to her claims. (*See, e.g.*, TAC (doc. # 29 at p. 7 ("parties subpoenaed will include: President Barack Obama, Vice President Joe Biden, Jr., Oprah Winfrey, former President Bill Clinton, etc."); p. 16 ("then the lawyers put the 'hocus pocus' on the email;" reference to "Alex Rodriguez (A-Rod)", who is professional baseball player for the New York Yankees;"); p.17 ("Supervisor Johnson's religion proved false to Ms. Park . . ."); p. 23 (a coworker's salary and bonus); p. 29 ("Defendant's [sic] also may have fired staff because they were over-budgeted."); p. 32 ("In Latin, 'delectation morosa' means 'the habit of dwelling with enjoyment on evil thoughts.' Ms. Park is not saying Mr. Clinton knows whores."); p. 33 ("Plaintiff was overwhelmed with the responsibility of reporting violent threats towards all upcoming 2008 Democratic National Convention attendees."); p. 35 ("Plaintiff took direction from both Defendant's [sic] staff listed with the exception of Eternick and is petrified of deep water and knew someone personally who drowned when she was a little girl."); p. 37 ("It is a disgrace to degrade French WWII war heroes;" "his false cloak of Christianity was really the heart of Satan before her"); p. 38 ("Plaintiff took 2 weeks Short-Term Disability due to fear of Defendant's [sic] staff and TD Ameritrade et al staff harming of killing her . . ."); p. 41 ("Ms. Park believes it is right to fight *hard* for her country, America, to keep it safe."); p. 43 ("Ms. Park sent 3 page letter to President Obama, Vice President Biden, U.S. Attorney Eric Holder, Jr., and several Senator's [sic] regarding the EEOC, Denver FBI, and Denver U.S. Attorney's Office . . ."); p. 57 ("the President and Chairman of the Board closed their eyes while Ms. Park was 'emotionally backed into a corner' and 'kicked until her visage was so marred she was unrecognizable as a human being' at TD Ameritrade et al.").

Ms. Park refers to the Defendants collectively. *See, e.g.*, doc. # 29 at p. 8 of 60 ("Plaintiff realized Defendant's were a Fortune 500 company"). Ms. Park does not differentiate which allegations relate to which Defendant. *See Colorado Legal Services v.*

*Legal Aid Nat. Services*, 2009 WL 347500, \*\*3-4 (D. Colo. Feb. 11, 2009) (Ex. B to Motion to Dismiss (doc. # 38-2) (granting motion to dismiss complaint where plaintiffs "couched many of the operative factual allegations in the Complaint in a collective, undifferentiated reference to 'Defendants.'").

Because Ms. Park alleges that she filed her Charge Of Discrimination with the EEOC on September 15, 2008 (*see* TAC (doc. # 29) at p. 6 of 60), any alleged conduct preceding November 20, 2007 (more than 300 days prior to the EEOC charge) is not actionable. *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (Title VII and ADA claims require a plaintiff to file a timely administrative claim within 300 days of challenged discriminatory action). In addition, Ms. Park alleges that she became an employee of TD Ameritrade Trust Company, Inc. "from 3/17/08 onward." (*See* TAC (doc. # 29) at p. 5 of 60; *see also id.* at p. 26 of 60 ("On 3/17/08 . . . Plaintiff began work as a Trust Processor/Trader for TD Ameritrade. . . ."). Therefore, any alleged conduct that occurred after March 17, 2008 is not actionable against the named Defendants.

The court is unable to locate any allegations in the TAC that support a claim that an adverse employment action was taken against Ms. Park between November 20, 2007 and March 17, 2008 as retaliation for engaging in a protected activity. *See, e.g.*, TAC at p. 17 of 60 (supervisors "condoned" e-mails); p. 20 of 60 (Ms. Park was "wound[ed]" by statements that she "was slow in processing Rejects"); p. 22 of 60 (Ms. Park was reprimanded "to work Rejects faster"); p. 23 of 60 (Ms. Park "rebuffed . . . sexual banter"); p. 24 of 60 (Ms. Park was "informed to send erroneous e-mails"); pp. 24-25 of 60 (Ms. Park's work performance was "degraded" by statement that she "was slow at processing Rejected Trades"). These alleged comments and e-mails do not rise to the level of an adverse employment action. Ms. Park alleges that her supervisor changed her duties, asking her to "perform 3 full-time jobs in 37.5 hours per week." (*See* TAC (doc. # 29 at p. 24 of 60). Ms. Park does not allege, however, that the change in her duties was motivated

or caused by animus based on her protected class or in retaliation for engaging in a protected activity.

Nor do Ms. Park's allegations state a claim for hostile work environment. While Ms. Park makes allegations regarding workplace comments and e-mails that she found offensive, she fails to allege that such comments or e-mails were directed to her or based on her protected class. Ms. Park merely conclusorily alleges that she was subject to "harassment" and a "hostile work environment." The broad allegation of a "hostile work environment" does not by itself state a claim. "The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (cited in *Moya v. Schollenberger*, 465 F.3d 444, 457 (10th Cir. 2006)).

Ms. Park has failed to sufficiently allege that she is disabled under the ADA. To be "disabled" under the ADA, a plaintiff must show he has a physical or mental impairment that substantially limits one or more major life activities. *Holt v. Grand Lake*, 443 F.3d 762, 765 (10th Cir. 2006). Merely having an impairment does not make one disabled for purposes of the ADA. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir. 2001) ("the ADA demands that we examine exactly how [plaintiff's] major life activities are limited by his impairment."). "Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).

Ms. Park has not alleged that she is substantially limited any major life activity. Therefore, Ms. Park fails to sufficiently allege a "disability." A determination of disability "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Homeyer v. Stanley*

*Tulchin Associates, Inc.*, 91 F.3d 959, 962 (7th Cir. 1996). "Some impairments may be disabling for particular individuals but not for others, depending upon the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors." *Id.* The court concludes that Ms. Park has failed to adequately state a plausible claim for relief under the ADA.

Ms. Park essentially asks the court to "scale a mountain of inferences" to find that she has stated claims upon which relief can be granted. *Peterson*, 594 F.3d at 729. This court "decline[s] to engage in such inferential analysis, or to take a myriad of other analytical leaps" she asks it to take. *Id.* The TAC fails to set forth sufficient allegations to state claims for relief under the ADA, for retaliation under Title VII and 42 U.S.C. § 1981, or for hostile work environment under Title VII. For these reasons also, the First, Second, Third, and Ninth Claims for Relief (all of Ms. Park's federal claims) are properly dismissed.[3]

VI.  Additional Federal Claims

In the captions of her Claims for Relief, Ms. Park alleges causes of action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988. (*See* TAC (doc. # 29) at pp. 45, 47-48, 51-53, 55-56, 58). Ms. Park has not set forth any allegations to support such claims and mere recitation of numerous statutes is insufficient to state a claim for relief.

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals "who, under color of any statute, ordinance, regulations, custom, or usage, of any State . . . " are deprived of "any rights, privileges, or immunities secured by the Constitution and laws. . .

---

[3] To the extent that Ms. Park alleges a violation of 42 U.S.C. § 2000e-10 (*see* caption of Sixth Claim for Relief), Section 2000e-10 does not include a private right of action entitling her to damages. *See Hudson v. Loretex Corp.*, 1997 WL 159282 at *7 (N.D.N.Y. Apr. 2, 1997) (holding that "no private cause of action" exists to enforce the provisions of 42 U.S.C. § 2000e-10). *See also E.E.O.C. v. Sheet Metal Workers, Int'l Assn., Local No. 122*, 463 F. Supp. 388, 425 (D. Md. 1978) ("the failure to post is not itself an unlawful employment practice but only a violation whose willful commission is punishable by a $100 fine.").

."  To assert a claim under § 1983, Ms. Park must allege a deprivation of a federal or constitutional right by a person acting under color of state law.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  Nowhere in the TAC has Ms. Park alleged violation of a constitutional or federal right by a person acting "under color" of a state "statute, ordinance, regulation, custom, or usage."  42 U.S.C. § 1983.  Ms. Park fails to state a claim for relief pursuant to § 1983.

Section 1985 outlaws various classes of conspiratorial activity.  *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  Section 1985 proscribes any conspiracy to: (1) prevent an officer from performing duties; (2) obstruct justice, or intimidate a party, witness or juror; and (3) deprive persons of rights or privileges.  Ms. Park's citation to § 1985 in the captions of her Claims for Relief is insufficient to state a conspiracy claim.  *See, e.g., Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir.1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").  *See also Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir.1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences.") (internal quotation marks and citation omitted).  Ms. Park has provided no facts to support an inference that some plan or joint action existed between any of the Defendants.  *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").  Further, "an underlying unlawful act is necessary to prevail on a civil conspiracy claim."  *Peterson v. Grisham*, 594 F. 3d 723, 730 (10th Cir. 2010).  Without stating a claim for an actual deprivation of rights, Ms. Park cannot state a conspiracy claim.

*See Dixon v. Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (In order to prevail on a § 1983 conspiracy claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.").

Since a § 1986 claim is premised upon the existence of a valid § 1985 claim, any § 1986 claim Ms. Park brings also fails. *See Wright v. No Skiter Inc.*, 774 F.2d 422, 426 (10th Cir. 1985) (claim under § 1986 "depends on the existence of a valid claim under § 1985"). *See also Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983) ("Section 1986 depends on the existence of a claim under § 1985."); *Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972) ("Because of a failure to establish any § 1985 right, the interrelated, dependent cause of action under Section 1986 was also correctly dismissed.").

Section 1988 neither creates rights nor confers jurisdiction. *Barr v. United States*, 478 F.2d 1152 (10th Cir. 1973). *See also Moor v. Alameda County*, 411 U.S. 693, 702 (1973) (Section 1988 does not create an independent cause of action for the protection of civil rights). Further, *pro se* litigants such as Ms. Park may not recover an award of attorney's fees pursuant to § 1988. *Turman v. Tuttle*, 711 F.2d 148, 149 (10th Cir. 1983).

Accordingly, to the extent that Ms. Park may be alleging any claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, such claims are properly dismissed for failure to state a claim upon which relief can be granted.

VII. State Law Claims

Title 28 U.S.C. § 1367(c) provides:

"[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
. . .
(3) the district court has dismissed all claims over which it has original jurisdiction, . . .

*See also Habecker v. Town of Estes Park, Colorado*, 452 F. Supp.2d 1113, 1135 (D. Colo. 2006) (declining to exercise supplemental jurisdiction); *see also United Mine Workers of*

*Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").

In addition to her federal claims, Ms. Park has asserted six state law claims for relief: Fourth Claim For Relief ("Discriminatory or Unfair Employment Practice Under "CADA" Gender/Gender Plus"); Fifth Claim For Relief ("Promissory Estoppel & Breach of Contract"); Sixth Claim For Relief ("Negligence"); Seventh Claim For Relief ("Outrageous Conduct, Threats & Implied Threats"); Eighth Claim For Relief ("Intentional Infliction of Emotional Distress"); and Tenth Claim For Relief ( "Fraud"). Because the court recommends dismissal of all the claims over which it has original jurisdiction, and based on the stage of this litigation, judicial economy, and comity, the court further recommends dismissal of any state law claims pursuant to 28 U.S.C. § 1367(c).

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss (filed July 21, 2010) (doc. # 38) be GRANTED and that this civil action be dismissed.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th*

*Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 30th day of September, 2010.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge